**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles Jay AUTEN,**
**Defendant–Appellant.**

**No. 80–1269**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.
Unit A

Dec. 8, 1980.

Alfred J. Weisberg, Denison, Tex., for defendant–appellant.

Christian Harrison, Asst. U. S. Atty., Tyler, Tex., for plaintiff–appellee.

Before BROWN, POLITZ and TATE, Circuit Judges.

POLITZ, Circuit Judge:

Charles Jay Auten's 1977 conviction of conspiracy to negotiate stolen money orders was affirmed on direct appeal, *United States v. Auten*, 570 F.2d 1284 (5th Cir. 1978). He now appeals the denial of his petition for habeas corpus relief under 28 U.S.C. § 2255, and the denial of his motions for additional discovery and for an evidentiary hearing. We reverse and remand.

Auten and six others were indicted for conspiring to pass stolen money orders in violation of 18 U.S.C. § 371. Four of the others were also charged with substantive counts. Auten, tried alone, was confronted with the testimony of several of his co–conspirators. One of the government's key witnesses, an unindicted co–conspirator named Michael Roy Taylor, was granted immunity immediately before the trial. The testimony of Taylor and that of Taylor's girlfriend, Cynthia Myers, are at the center of Auten's attack on his conviction.[1]

Auten assigns four grounds for the relief sought: (1) the prosecution knowingly offered the perjured testimony of two co–conspirators, (2) the prosecution failed to disclose that one of its witnesses had signed the front of some of the money orders involved, (3) the prosecution failed to disclose that one of its key witnesses had been convicted more than one time, and (4) he had ineffective appointed counsel.

■ We find no merit in the first two contentions. Auten does not point to any evidence, nor do we find any in the record, to support his allegation that the government knowingly used perjured testimony of Taylor and Myers pertaining to Auten's involvement in the conspiracy. Nor do we find support for the assertion that Taylor signed the money orders and that the government withheld this information. Auten's conclusory assertions do not support the request for an evidentiary hearing.

*United States v. Jones*, 614 F.2d 80 (5th Cir. 1980).

The third challenge has merit and compels closer scrutiny. Auten asserts that the government's failure to disclose the criminal record of Taylor constituted a denial of due process and is contrary to the directives of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. At trial Taylor admitted that in 1971 he was convicted of forgery and served one year in jail followed by two years on probation. He denied any other convictions. Auten attached two documents to his motion for discovery indicating two other possible convictions of Taylor. The first instrument, entitled "Conditions of Probation," emanates from the Third Judicial District Court, Las Animas County, Colorado. Dated March 23, 1976, it is addressed to Michael Roy Taylor in pleadings entitled "*The People of the State of Colorado vs. Michael Roy Taylor.*" It bears the signature "Michael Taylor" and by its terms provides for a three year probation period expiring on March 23, 1979. The second instrument, dated February 26, 1976, is entitled "Waiver of Extradition Proceedings" and reflects that one Mike Taylor was charged in Bonham, Texas with armed robbery. The instrument reflects that Mike Taylor appeared before the court in Las Animas County, Colorado and agreed to extradition to Texas. A cursory, untutored examination of the signatures on the two instruments strongly suggests that the same person signed both.

The government denies any knowledge that Michael Roy Taylor had more than the one conviction he admitted at Auten's trial in September 1977. In its responsive pleading the government advises that the decision to use Taylor as a witness was made the night before the trial, no background report by the Federal Bureau of Investigation was made, nor was an inquiry directed to the National Crime Information Center. Taylor confessed his complicity in the pend-

---

1. Taylor testified, *inter alia*, that he and Auten broke into a post office and stole the subject money orders.

ing criminal proceeding, was granted immunity the next morning, and testified shortly thereafter.

■ A valid *Brady* complaint contains three elements: (1) the prosecution must suppress or withhold evidence, (2) which is favorable, and (3) material to the defense. *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); *Monroe v. Blackburn*, 607 F.2d 148 (5th Cir. 1979); *United States v. Anderson*, 574 F.2d 1347 (5th Cir. 1978). The prosecution challenges the first element, insisting that it could not withhold or suppress evidence unknown to it. That the prosecutor, because of the shortness of time, chose not to run an FBI or NCIC check on the witness, does not change "known" information into "unknown" information within the context of the disclosure requirements. As we observed in our *en banc* decision in *Calley v. Callaway*, 519 F.2d 184, 223 (5th Cir. 1975):

> The basic import of *Brady* is ... that there is an obligation on the part of the prosecution to produce certain evidence actually or constructively in its possession or accessible to it in the interests of inherent fairness.

And again at 224:

> The leading articles on enhanced criminal discovery emphasize what we stress here, that *Brady* and other means of criminal discovery indicate the need for disclosure of important information known or available to the prosecutor in order to promote the fair administration of justice.

The need referred to in *Calley* is premised on the fact that the prosecutor has ready access to a veritable storehouse of relevant facts and, within the ambit of constitutional, statutory and jurisprudential directives, this access must be shared "in the interests of inherent fairness ... to promote the fair administration of justice." *See also Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). If disclosure were excused in instances where the prosecution has not sought out information readily

available to it, we would be inviting and placing a premium on conduct unworthy of representatives of the United States Government. This we decline to do.

The argument proffered by the government is not new. In *United States v. Deutsch*, 475 F.2d 55 (5th Cir. 1973), the prosecution contended that it was not in possession of the information requested by the defendant.[2] The information sought was in the files of the United States Postal Service. We noted that the prosecution was not denying that it had access, it merely denied present possession "without even an attempt to remedy the deficiency." *Id.* at 57. Finding no suggestion in *Brady* that different arms of the government are such separate entities as to be insulated one from the other, we remanded *Deutsch* for an examination of the information involved after concluding that the prosecutor was, for disclosure purposes, in possession of the subject information. *See United States v. Trevino*, 556 F.2d 1265 (5th Cir. 1977). Recently in *United States v. Antone*, 603 F.2d 566, 569 (5th Cir. 1979), we cited *Deutsch* as authority for the declaration that we decline "to draw a distinction between different agencies under the same government, focusing instead upon the 'prosecution team' which includes both investigative and prosecutorial personnel."

■ We conclude that the government did have knowledge, for purposes of the disclosure requirements, of the criminal record, whatever it may be, of the Michael Roy Taylor it called as a witness, and that it withheld or suppressed the available information. In reaching this conclusion we do not assign bad motive or bad faith to the prosecution. We do underscore, however, the heavy burden of the prosecutor to be even–handed and fair in all criminal proceedings.

■ The second *Brady* element requires that the evidence be favorable to the defendant. The alleged criminal record of

---

2. *Deutsch* involved charges of giving money to a postal employee "with intent to induce [him] to do an act in violation of his lawful duty."

475 F.2d at 56. The defendants had moved for production of the employee's personnel file.

Michael Roy Taylor would have been of value in impeaching his credibility, particularly in light of his specific denial of any other conviction. *Brady* requires disclosure of evidence favorable to the accused on the issue of guilt as well as evidence which serves to impeach the testimony of adverse witnesses. *United States v. Gaston*, 608 F.2d 607 (5th Cir. 1979); *United States v. Anderson, supra*; *Williams v. Dutton*, 400 F.2d 797 (5th Cir. 1968), *cert. denied*, 393 U.S. 1105, 89 S.Ct. 908, 21 L.Ed.2d 799 (1969). This second element is present in the case at bar.

■■■ The third element, materiality, is weighed against one of four distinct situational standards: (1) the prosecutor has not disclosed evidence when there has been a specific request, (2) the prosecutor has not disclosed information when there has been a general request or no request, (3) the prosecutor knows or should have known that the conviction is based on false evidence, and (4) the prosecutor fails to disclose, in the absence of a specific request, evidence which is relevant only for impeachment. *United States v. Anderson, supra.* At first blush this case appears to fall into the fourth category; only a general request for exculpatory evidence had been made and Taylor's criminal record was useful only for purposes of impeachment. On closer examination, however, it appears conceivable that there may be an overlap into the third category. If Auten's contentions are correct, Taylor committed perjury when he testified that he had only one prior conviction. If he did lie about one or more additional prior convictions, of which the government is charged with constructive knowledge, we are confronted with the situation in which the prosecution knows or should know the conviction is based on false evidence. In that instance the test to be applied is whether it is reasonably likely that the truth would have affected the outcome of the trial, that is, whether the jury would have reached a different verdict. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1971); *United States v. Antone, supra.*

We cannot be certain that the jury would have reached a different verdict if Taylor had been impeached by proof of additional convictions. That Taylor's testimony was considered of substantial weight, however, is reflected by our observation in the opinion on his direct appeal. While addressing the issue of sufficiency of the evidence we stated that "the testimony of two participants, Cynthia Myers and Michael Taylor, plainly established the existence of a conspiracy ... and defendant's role in this conspiracy." *United States v. Auten*, 570 F.2d at 1286. We did not evaluate the testimony of the other witnesses because we considered the testimony of Taylor and his girlfriend to be so strong that there obviously was sufficient evidence to sustain the conviction. We cannot say that it is unreasonable to conclude that had Taylor been forcefully impeached, the jury's verdict might have been different.

■■■ We do not know how many additional convictions, if any, the witness Michael Roy Taylor has. The district judge did not hold an evidentiary hearing on Auten's motions, denying them on a consideration of the totality of the evidence against him. Under 28 U.S.C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held. *Dupart v. United States*, 541 F.2d 1148 (5th Cir. 1976); *Reagor v. United States*, 488 F.2d 515 (5th Cir. 1973). In *Dupart* the record was silent as to criminal charges against a witness whose veracity had been challenged. Since the record did not conclusively show that the petitioner was not entitled to the relief sought, we remanded for an evidentiary hearing. We did the same in *Deutsch*, and are convinced that the same action should be taken in this case.

Auten's allegations about ineffective counsel are based primarily on his attorney's failure to investigate and impeach Taylor. This issue is so related to the issue of Taylor's criminal record that it should be resolved at the same time. Auten is entitled to reasonably effective assistance of counsel. *Friedman v. United States*, 588

F.2d 1010 (5th Cir. 1979); *United States v. Gray*, 565 F.2d 881 (5th Cir.), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1587, 55 L.Ed.2d 807 (1978). The constitutional right to reasonably effective counsel does not mean errorless counsel, nor may we judge the performance of counsel with the invariable 20–20 visual acuity which abides in hindsight. As we observed in *United States v. Gray*, 565 F.2d at 887:

> A review of Fifth Circuit law indicates that this Court's methodology involves an inquiry into the actual performance of counsel in conducting the defense and a determination whether reasonably effective assistance was rendered based on the totality of the circumstances and the entire record. This Circuit does not blindly accept speculative and inconcrete claims of "what might have been if." If an appellant can point to specific examples of ineffectiveness, we have not hesitated to grant a new trial or hearing.

We conclude that this cause must be remanded for an evidentiary hearing to sort out the true facts about the witness Michael Roy Taylor's criminal record and the prejudice to Auten, if any, as a consequence of the jury not knowing the truth about a key government witness, if indeed they did not know the truth. The test to be applied is whether it is reasonably likely that the jury would have reached a different verdict had they known the truth. At the same time the district court should examine the allegation of ineffective assistance of counsel, consistent with the views expressed above.

REVERSED and REMANDED.