**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Clarence Duane HENDRICKS, Defendant-Appellant.**

**Nos. 80–2227, 80–2299.**

United States Court of Appeals, Fifth Circuit.*
Unit A

Nov. 9, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Gary Barnard, Amarillo, Tex. (court-appointed), for defendant-appellant.

Paulina M. Jacobo, Asst. U. S. Atty., Lubbock, Tex., for plaintiff-appellee.

Before THORNBERRY, REAVLEY and POLITZ, Circuit Judges.

THORNBERRY, Circuit Judge:

Clarence Duane Hendricks stole a 1973 Dodge Charger from Hedgecoke Motor Company in Amarillo, Texas, on February 28, 1979. On March 1, 1979, he was arrested by a state highway patrolman near Hot Springs, Arkansas. He gave a statement to local police and admitted taking the car and some credit cards found in the car. Arkansas authorities detained appellant in jail pending extradition to Amarillo. No charges were filed, however, by state prosecutors in either Arkansas or Texas, and on April 10, 1979, appellant was released. Federal investigators were unaware of appellant's confinement in Arkansas until March 28, three weeks after his arrest. Eight months later, on November 29, 1979, a federal grand jury indicted Hendricks, and the indictment subsequently was entered into the computer for the National Crime Information Center (NCIC). At this time, he was incarcerated in the Elko County Jail, Elko, Nevada, where he had been imprisoned since September 27, 1979, on charges of embezzlement. On December 7, 1979, he was moved to the Nevada State Prison where he remained until June 20, 1980. He was arrested on the charges involved in this appeal on July 10, 1980, eight months after his indictment. Hendricks was arraigned on September 25 and tried on November 3, 1980. A jury found him guilty of interstate transportation of a stolen vehicle and stolen credit cards in violation of 18 U.S.C. § 2312 and 15 U.S.C. § 1644(b). He was sentenced to serve three years imprisonment on each charge. He protests, on this appeal, the twenty-two month delay between his offense and conviction.

Appellant first claims that the nine-month delay between offense and indictment denied him due process of law. We disagree.

Statutes of limitations provide the primary guarantee against bringing overly stale criminal charges. *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977). Thus, pre-indictment delay rarely constitutes grounds for dismissal. The Due Process Clause of the Fifth Amendment requires dismissal only when the delay "caused substantial prejudice to [defendant's] rights to a fair

trial and ... was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *United States v. Nixon*, 634 F.2d 306, 310 (5th Cir. 1981); *United States v. Ramos*, 586 F.2d 1078, 1079 (5th Cir. 1978).[1]

█ While the government offers no explanation for the nine-month period between offense and indictment, appellant has produced no evidence even tending to show that the delay was a deliberate tactical maneuver by the government. Furthermore, appellants' only suggestion of prejudice is his claim of faulty memory.[2] This Court has held consistently that general allegations of loss of witnesses and failure of memories are insufficient to establish substantial prejudice. *United States v. Ramos, supra*, 586 F.2d at 1079; *United States v. Avalos*, 541 F.2d 1100, 1108 (5th Cir. 1976), *cert. denied*, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977). The District Court correctly denied appellant's motion to dismiss for denial of due process.

█ Appellant also contends that the District Court erred in denying his motion to dismiss for failure to grant a speedy trial. He rests this assertion in part on § 3161(j)(1) of the Federal Speedy Trial Act (FSTA), title 18 U.S.C. This section provides:

> (j)(1) If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly—

> (A) undertake to obtain the presence of the prisoner for trial; or

> (B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

Appellant asks us to define for the first time when an attorney for the government will be charged with knowledge of a defendant's incarceration under this statute. He argues, in brief, that constructive knowledge should trigger § 3161(j)(1) and that the government should bear the burden of proving lack of knowledge. We cannot accept this construction of the statute on the facts presented here.

Courts have had few occasions to consider § 3161(j)(1), and in none of those instances have they addressed the precise issue before us. See *United States v. Bryant*, 612 F.2d 806, 811 (4th Cir. 1979); *cert. denied*, 446 U.S. 920, 100 S.Ct. 1855, 64 L.Ed.2d 274 (1980); *United States v. Weaver*, 565 F.2d 129, 132 (8th Cir. 1977), *cert. denied*, 434 U.S. 1074, 98 S.Ct. 1263, 55 L.Ed.2d 780 (1978); *United States v. Cueto*, 506 F.Supp. 9, 11 (W.D.Okl.1979); *United States v. Quillen*, 468 F.Supp. 480, 481 (E.D.Tenn.1978), *aff'd without opinion*, 588 F.2d 831 (6th Cir. 1978); *United States v. Louzon*, 392 F.Supp. 1220, 1229 n.9 (E.D.Mich.1975). Moreover, in those cases where courts have cited § 3161(j)(1), the government's attorney actually knew of defendant's incarceration at the time of the indictment or shortly thereafter. We must look, therefore, to the

---

**1.** The Sixth Amendment right to a speedy trial does not attach with appellant's arrest by Arkansas police in March, 1979. Thus, we apply the Fifth Amendment standard of actual prejudice, rather than the Sixth Amendment speedy trial requirements. The Sixth Amendment right to a speedy trial arises when a person becomes "accused" by either indictment, information, or arrest. *United States v. Marion, supra*, 404 U.S. at 320, 92 S.Ct. at 463; *United States v. Hill*, 622 F.2d 900, 909 (5th Cir. 1980). The March arrest in Hot Springs, however, did not "accuse" appellant for purposes of the Sixth Amendment right to a speedy trial in a subsequent *federal* prosecution. To hold otherwise would force federal indictments of state arrestees and stand inconsistent with the doc-

trine of dual sovereignty that recognizes the validity of successive state and federal prosecutions. *United States v. Wilson*, 657 F.2d 755, pp. 766-767 (5th Cir. 1981); *United States v. Phillips*, 569 F.2d 1315, 1317 (5th Cir. 1978). *See also United States v. Lai Ming Tanu*, 589 F.2d 82 (2d Cir. 1978). This case, therefore, does not fall within 18 U.S.C. § 3161(b).

**2.** In *Lovasco*, the Supreme Court found no denial of due process even though the eighteen months that passed before indictment might have prejudiced the defendant, who attributed the loss of two material witnesses to the delay. *Lovasco, supra*, 431 U.S. at 785-86, 797, 97 S.Ct. at 7046, 7052.

words of the statute as the primary guide for decision.

The statute dictates specific action when the attorney for the government "knows" of the defendant's imprisonment. It does not refer to the government generally, nor does it employ the language of an objective standard by requiring action if the attorney "should have known" of defendant's incarceration. The legislative history of § 3161(j)(1), while not conclusive, is inconsistent with the statutory interpretation urged by appellant. In endorsing the statute, the Senate Judiciary Committee described it as setting forth "what is expected of the attorney for the Government *when he becomes aware of the fact* that the defendant against whom charges have been filed is already imprisoned." S.Rep.No.93–1021, 93rd Cong., 2d Sess., *reprinted in,* [1974] U.S.Code Cong. & Ad.News 7401, 7428 (emphasis added). Though this language indicates that Congress intended § 3161(j)(1) to apply only when the government's attorney actually knows of a defendant's incarceration in another jurisdiction, we need not go so far as to find that only actual knowledge brings into play the requirements of § 3161(j)(1).[3] The ambiguities in the evidence suggest that even if we read the words "should have known" into the statute, appellant's claim remains unsupportable.

Appellant reasons that when Postal Inspector Bartlett entered his name and the warrant for his arrest into the NCIC computer on December 14, 1979, he should have discovered that appellant was imprisoned in Nevada. He urges us to impute what Bartlett should have known to the government's attorney. If we resist speculation, the only evidence that tends to persuade us of this

reasoning is the existence of a general procedure whereby federal and state prisons record the fingerprints of prisoners and, then, transmit the fingerprints to the NCIC computer to be correlated with pending indictments. No evidence in the record shows that either the assistant United States Attorney or the postal inspector knew of appellant's incarceration until after July 10, 1980, when appellant was arrested by local police in Boise, Idaho. Other than the bare assertion of appellant's attorney, there is no evidence showing that the specific fact of appellant's imprisonment was actually available to the government's attorney through the NCIC computer. The record does not explain why Postal Inspector Bartlett failed to discover appellant's location when he entered the warrant with appellant's name into the NCIC computer on December 14, 1979. Though appellant asks us to infer neglect of duty, we could infer, just as easily, a computer malfunction or the failure of state authorities—for whatever reason—to enter appellant's fingerprints into the computer. Appellant offers no direct proof of negligence and no evidence of conscious inadvertence or bad faith on the part of the government's attorney or its investigator in failing to learn of his incarceration.

We would stretch to implausibility the language of § 3161(j)(1) and its legislative history if we were to impute knowledge to the government's attorney on the basis of a general procedure that malfunctioned in this case for some unexplained reason. While our result might be different if the evidence showed that the prosecution intentionally failed to check the computer and that the information was actually present to be discovered,[4] or if the information was

---

**3.** We recognize the possibility of a case arising that might compel us to hold the government's attorney constructively aware—if, for example, it were proven that the fact of incarceration was entered into the computer and that the attorney for the government deliberately chose not to check the NCIC system. We charged the government's attorney with knowledge in *United States v. Auten,* 632 F.2d 478 (5th Cir. 1980), where he admittedly decided not to check the computer about the arrest record of

a witness. *Id.* at 481. We stress here, however, that we are not deciding future cases raising § 3161(j)(1) and the varying factual patterns that may alter our result.

**4.** We have distinguished already the facts of *United States v. Auten, supra,* 632 F.2d at 480–81. We note here that the policies underlying *Auten* demonstrate a more compelling need to impute knowledge to the government than those that exist in the context of preserving

known to another federal agency rather than to state prison authorities,[5] we find on these facts that the attorney for the government had no knowledge of defendant's imprisonment.

After appellant's arrest in Boise, Idaho, the Government proceeded in compliance with the FSTA. Appellant arrived in Amarillo on September 12, 1980. He was arraigned on September 25, and trial began on November 3. The FSTA requires that trial commence within seventy days "from the date the defendant has appeared before a judicial officer of the court in which the charge is pending," 18 U.S.C. § 3161(c)(1). Appellant's trial was well within these time limitations since it occurred less than two months from his first appearance before a judicial officer of the Northern District of Texas, Amarillo Division. *See United States v. Umbower*, 602 F.2d 754, 758–59 (5th Cir. 1979), *cert. denied*, 444 U.S. 1021, 100 S.Ct. 678, 62 L.Ed.2d 652 (1980).[6]

■ Finding no statutory violation of appellant's speedy trial rights we now turn to his Sixth Amendment claim, which raises a related, but different, guarantee. *See United States v. Edwards*, 577 F.2d 883, 887 n.1 (5th Cir. 1978), *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978). Even if we assume that the delay between

indictment, on November 29, 1979, and trial, on November 3, 1980, is sufficiently long to invite our inquiry, *see United States v. Greer*, 655 F.2d 51, pp. 52–53 (5th Cir. 1981), we hold nevertheless that appellant has not shown a denial of his speedy trial rights under the broader constitutional test of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The determinative factor in the *Barker v. Wingo* analysis as applied to this case lies in the fourth prong of the test, prejudice to the defendant. Appellant again cites loss of memory and adds to it the loss of an opportunity for concurrent state and federal sentencing.

Faded memory cannot prejudice the defense to the extent necessary to violate the Sixth Amendment unless it substantially relates to a material fact in issue. *United States v. Mitchell*, 615 F.2d 1133, 1134 (5th Cir. 1980); *United States v. Edwards, supra*, 577 F.2d at 889. Appellant's somewhat questionable lost memory relates to a confession that he made to Arkansas police. The record reveals his memory to be highly selective in the appellant's favor, swinging from remarkable detail to a vague gap in recall, depending upon the area of inquiry. Evidence of guilt, in any event, is abundant even without the confession. Thus, we are satisfied from the record as a whole that

speedy trial rights. *Auten* involved a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 245 (1963). Unlike the advantages of the speedy trial right, in which both the defense and prosecution have a direct interest, *see Barker v. Wingo*, 407 U.S. 514, 521–23, 92 S.Ct. 2182, 2187–88, 33 L.Ed.2d 101 (1972), the benefits of prosecutorial disclosure required by *Brady* run entirely to the defendant, apart from the public interest in enhancing the overall administration of justice. Thus, while we might fear "conduct unworthy of representatives of the United States" in scrutinizing the fulfillment of *Brady* obligations, *United States v. Auten, supra*, 632 F.2d at 481, we recognize that prosecutorial self-interest in speedy trials tends to support, rather than undermine, the enforcement of defendant's Sixth Amendment speedy trial right. Moreover, the law in this Circuit, which led to a finding of knowledge in *Auten*, has read *Brady* to include evidence that is constructively in the possession of the prosecution. *See Calley v. Callaway*, 519 F.2d 184, 223 (5th Cir. 1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1976).

5. In *United States v. Deutsch*, 475 F.2d 55 (5th Cir. 1973), also relied on in *Auten*, information in the files of the United States Postal Service was imputed to the federal prosecutor for purposes of a *Brady* violation. Even when information in the hands of state authorities has been attributed to the federal prosecutor, those state officers had been cooperating intimately throughout the investigation that led to federal prosecution. *United States v. Antone*, 603 F.2d 566, 569-70 (5th Cir. 1970). Clearly no such relationship existed here between Nevada prison officials and federal investigative personnel in Amarillo.

6. Periods of delay prior to appellant's arrival in Amarillo are excused under 18 U.S.C. § 3161(h)(1)(G) and (H). Appellant contributed to the delay following his arrest by trying initially to enter a guilty plea pursuant to Rule 20 of the Federal Rules of Criminal Procedure.

appellant's vague claims of lost memory did not prejudice his defense.

■ We also find that appellant's incarceration in Nevada prior to his arrest, which he cites as being possibly concurrent with his federal sentence, is not the "oppressive pretrial incarceration contemplated in *Barker v. Wingo*" since the imprisonment was in a state facility following state criminal proceedings. *See United States v. Greer, supra*, pp. 53–54. Appellant relies on *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), to support a finding of prejudice based on the loss of a chance for concurrent sentencing. The critical facts in *Smith v. Hooey* are not present in this case. For seven years of his incarceration in federal prison, Smith asked the state for a trial. State authorities knew where he was imprisoned, and they were aware of his repeated demands to be brought to trial. Yet, they refused to prosecute the case. It would be anomalous for us to hold here that appellant was prejudiced when the federal prosecutor was excusably ignorant of appellant's imprisonment, when appellant was unaware of federal charges and made no demand for trial, when there is no evidence that the existence of federal charges worsened appellant's prison conditions, and when the period of possible concurrence is minimal, *see id.* at 379, 89 S.Ct. at 577.

■ Finally, appellant contends that certain remarks by his attorney during opening statement to the jury denied him effective assistance of counsel. This Court has held that "claims of inadequate representation cannot be determined on direct appeal where such claims were not raised before the District Court and there has been no opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Stephens*, 609 F.2d 230, 234 (5th Cir. 1980), *citing United States v. Rodriguez*, 582 F.2d 1015, 1016 (5th Cir. 1978). Since this is a

direct appeal, the issue is not properly before this Court.

■ Finding no ground for reversal in any of appellant's contentions,[7] we affirm the conviction without prejudice to appellant's right to raise the issue of ineffective assistance of counsel in a proper proceeding.

AFFIRMED.

---

7. Appellant also claimed that the District Court erred in denying him the right personally to exercise his peremptory challenges after voir dire and after the jury was impaneled and sworn. Appellant cites no law for this proposition, perhaps because it has no merit. *See* *United States v. Sarris*, 632 F.2d 1341, 1343 (5th Cir. 1980); *United States v. Hawkins*, 566 F.2d 1006, 1013 (5th Cir. 1978), *cert. denied*, 439 U.S. 848, 99 S.Ct. 150, 58 L.Ed.2d 151 (1978); *United States v. De Alba-Conrado*, 481 F.2d 1266, 1269 (5th Cir. 1973).