**UNITED STATES, Appellee**

v.

**Kayno M. REED, Seaman
U.S. Navy, Appellant.**

No. 94–6003.
CMR No. 94 0213.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 12, 1994.

Decided March 22, 1995.

**450**

For Appellant: *Lieutenant Brian C. Lansing*, JAGC, USNR (argued); *Commander Philip D. Cave*, JAGC, USN (on brief); *Lieutenant Gerard Wm. Wittstadt, Jr.*, JAGC, USNR.

For Appellee: *Lieutenant Command Lyle H. Bowen, Jr.*, JAGC, USN (argued); *Colonel J. Composto*, USMC, and *Commander Stephen A. Stallings*, JAGC, USN (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

1. The military judge granted the accused's motion to dismiss the rape charge because of denial of speedy trial under the Fifth Amendment Due Process Clause. The Government appealed this ruling under Article 62, Uniform Code of Military Justice, 10 USC § 862 (1983), to the Court of Military Review which reversed the judge's ruling. This Court then granted the petition to review the decision of the Court of Military Review[1] on the following issue:

> WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED IN REVERSING THE MILITARY JUDGE'S RULING THAT THE GOVERNMENT FAILED TO ACCORD APPELLANT DUE PROCESS OF LAW THROUGH ITS PRE–PREFERRAL DELAY IN BRINGING THE CASE TO TRIAL.

We hold that there was no violation of appellant's right to speedy trial under the Fifth Amendment's Due Process Clause.

### FACTS

2. The rape charge in this case stems from a weekend party at a civilian hotel in November 1991 attended by a group of sailors who were assigned to various ships and undergoing apprenticeship training in Orlando, Florida. Seaman X alleges she was raped twice in a hotel room after she had passed out on a bed after overindulging in alcohol. She did not immediately report the incident but told her husband in January 1992 after watching a movie in which a girl was raped. Her husband reported this to a chaplain, who in turn reported it to the command. Unpub. op. at 1–2. X was referred to the Naval Investigative Service (NIS) in San Diego to make a report about the incident. X was not then sure of the identity of the rapist.

3. On March 13, 1992, Robin Flanders, the control agent for NIS in San Diego, requested information from Orlando pertaining to X's allegations. On March 31, 1992, Agent Flanders obtained rosters from the various ships and units in order to attempt to identify the suspect and witnesses. On April 27, 1992, X identified the name "Kayno Reed" as a suspect as well as the names of other witnesses. As a result, NIS sent requests for further inquiries to six other locations including Mayport, Florida, to obtain appellant's photograph and fingerprints. Following this inquiry, the agents had to contact two additional locations because the individuals were on ships that had moved. In May 1992, NIS learned that one of the witnesses, McElroy, was deployed to the Western Pacific and would not return to Honolulu until July 1992. NIS agents also learned that appellant had deployed from Mayport with his ship.

4. Appellant's command first learned of the investigation when they docked in Malta in August 1992. Appellant's command received a copy of the victim's statement and a request from NIS for additional information, including photographs for a lineup. The ship left Malta, and its officers did not hear about the rape again until around December 1992 when they returned to the Caribbean. NIS completed its initial investigation on December 8, 1992, and sent a copy to appellant's command.

5. On January 13, 1993, appellant's commander requested a followup investigation.

---

1. *See* 41 MJ 213, 229 n. * (1994).

The followup involved reinterviewing McElroy who may have been one of the witnesses in the hotel room on the evening of the rape. McElroy was contacted on May 6, 1993, by telephone but was unable to provide additional information. On September 4, 1993, appellant was notified that his term of enlistment was being extended because of the investigation. He was not allowed to take any examinations for promotion after that date and was also placed on medical hold because of an injury to his knee.

6. On September 24, 1993, the charges and specifications were preferred against the accused, and he was informed of these on September 27, 1993. The charges were received by the summary court-martial convening authority on October 5, 1993; and on October 8, 1993, an investigation under Article 32, UCMJ, 10 USC § 832, was conducted. The Article 32 investigation was completed on October 21, 1993, and the investigating officer recommended trial by general court-martial. Appellant's command forwarded the charges to the general court-martial convening authority on November 23, 1993, recommending a general court-martial. The charges were referred to trial on January 10, 1994.

## DISCUSSION

7. No discussion of the issue in this case can begin without setting forth (A) the sources of speedy-trial rights in the military; (B) the due process two-prong test; and (C) the burden of proof.

### A. Sources of Right to Speedy Trial

8. There are a number of sources of the right to a speedy trial in the military: (1) statute of limitations; (2) Due Process Clause of the Fifth Amendment; (3) Sixth Amendment speedy-trial guarantee; (4) Articles 10 and 33 of the Code, 10 USC §§ 810 and 833, respectively; (5) RCM 707, Manual for Courts–Martial, United States, 1984 (Change 5); and (6) case law.

■ 9. The accused alleges a denial of speedy trial under the Due Process Clause of the Fifth Amendment because the Sixth Amendment speedy-trial protection does not apply to pre-accusation delays when there has been no restraint. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Vogan*, 35 MJ 32 (CMA 1992). Likewise, Article 10, Article 33, and RCM 707 are triggered either by pretrial restraint or preferral of charges. There is protection against erroneous restraint. When there is an arrest and detention, the Government must establish probable cause to believe that the suspect has committed an offense and the detention "is required by the circumstances." RCM 304(c). *See United States v. Rexroat*, 38 MJ 292 (CMA 1993).

■ 10. Absent restraint, the "primary guarantee," *United States v. Marion*, 404 U.S. at 322, 92 S.Ct. at 464 ¶ 15, or "primary protection," *Perez v. Sullivan*, 793 F.2d 249, 259 ¶ 27 (10th Cir.1986), against pre-accusation delay is the statute of limitations. As the Supreme Court noted in *Toussie v. United States*, 397 U.S. 112, 114–15, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 ¶ 4 (1970):

> The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature had decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity....

While the military statute of limitations, Article 43, UCMJ, 10 USC § 843, provides protection against pre-accusation delay, it may not be sufficient by itself—thus appellant's reliance upon the Due Process Clause of the Fifth Amendment.

### B. Due Process Standard

■ 11. As we explained in *Vogan*: "[T]he Fifth Amendment Due Process Clause may be applicable to protect an accused

against egregious trial delays." 35 MJ at 34 ¶ 8. There may be a due process violation when "incurred in wreckless disregard of circumstances, known to the prosecution, suggesting that there existed an appreciable risk that delay would impair the ability to mount an effective defense." *United States v. Lovasco,* 431 U.S. 783, 795 n. 17, 97 S.Ct. 2044, 2051 n. 17, 52 L.Ed.2d 752 (1977); *cf. United States v. Kossman,* 38 MJ 258 (CMA 1993).

■ 12. We agree with the Court of Military Review that the military judge misapplied *Lovasco.* There·the Court held there was no violation of due process, 431 U.S. at 796, 97 S.Ct. at 2052 ¶ 17, even though the defense claimed the death of two material witnesses had occurred during the delay. *Id.* at 785, 97 S.Ct. at 2046 ¶ 4. The Court conceded that pre-accusation delay could result in a violation of due process. *Id.* at 789, 97 S.Ct. at 2048 ¶ 9. The Court in *Lovasco* cited *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), for the proposition that "proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." 431 U.S. at 790, 97 S.Ct. at 2049 ¶ 10. Thus, prejudice is only one prong of a due process claim. There must be an examination of the reason for the delay. However, the prosecution is not required "to file charges as soon as probable cause exists." 431 U.S. at 791, 97 S.Ct. at 2049 ¶ 12.

**C.  Burden of Proof**

13. Most of the federal courts, relying on *Lovasco* and *Marion,* have held that the defendant has the burden of proof to show an egregious or intentional tactical delay and actual prejudice.[2]

■ 14. Speculation by the defendant is not sufficient. *See, e.g., United States v. Wallace,* 848 F.2d 1464 (9th Cir.1988); *United States v. Birney,* 686 F.2d 102, 105 ¶ 12 (2d Cir.1982). The defense may establish prejudice by showing: (1) the actual loss of a witness, as well as "the substance of their testimony and the efforts made to locate them," *United States v. Tousant,* 619 F.2d 810, 814 ¶ 19 (9th Cir.1980); or (2) the loss of physical evidence, *see, e.g., United States v. Dennis,* 625 F.2d 782, 794 ¶ 18 (8th Cir.1980); *United States v. Tousant,* 619 F.2d at 814 ¶ 19; *United States v. Comosona,* 614 F.2d 695, 697 ¶ 7 (10th Cir.1980) ("[C]onclusory allegations of prejudice, otherwise unsupported in the record, do not constitute valid grounds for dismissal").

■ 15. While this case was not a model of celerity, appellant has not met his burden of showing egregious or intentional tactical delay and actual prejudice. Here, the difficulties were in coordinating the location of witnesses throughout the world. Even when the first investigative report was completed, appellant's command found it to be skeletal and requested additional information. Until September 1993, while the investigation was ongoing, appellant was not under charges or any sort of restraint. Additionally, the prejudice to appellant was minimal and did not involve lost witnesses or physical evidence.[3]

**2.** *United States v. Byrd,* 31 F.3d 1329, 1339 ¶ 23 (5th Cir.1994) ("a defendant must demonstrate that the prosecutor intentionally delayed the indictment to gain a tactical advantage *and* that the defendant incurred actual prejudice"); *Perez v. Sullivan,* 793 F.2d 249, 259 ¶ 27 (10th Cir. 1986) ("the delay was purposefully caused by the government to gain a tactical advantage or to harass"); *United States v. Amuny,* 767 F.2d 1113, 1119 ¶ 18 (5th Cir.1985) (the defendant must "establish that (1) the prosecutor intentionally delayed indicting him to gain a tactical advantage *and* (2) the defendant incurred actual prejudice as a result of the delay"); *United States v. Swacker,* 628 F.2d 1250, 1254 ¶ 18 (9th Cir. 1980); *United States v. Comosona,* 614 F.2d 695,

696 ¶ 3 (10th Cir.1980). *Cf. Howell v. Barker,* 904 F.2d 889 (4th Cir.1990) (apparently applying a different standard over-vigorous dissent—court found violation because of assumed prejudice and delay was for "convenience").

**3.** In its opinion the court below observed:

[T]he military judge stated that the mere length of delay created an inference that memories will fade.... Conspicuously absent from the record is any indication from the defense affirmatively asserting either (a) that the accused does not know the identity of this man [the person who went to the hotel room with appellant on the night in question] with whom he spent some time, or (b) that the man will

He was placed on legal hold 23 days before being informed of the charges and was, as is standard, not permitted to take examinations for further promotions until the charges were resolved.

16. Appellant has not met his burden of proof to show a violation of both prongs of the due process test. Thus, we hold there was no violation of due process.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges COX and GIERKE, concur.

SULLIVAN, Chief Judge (dissenting):

17. The precise question before this Court is whether the Court of Military Review erred in reversing the military judge's ruling dismissing the charges for pretrial delay in violation of the Fifth Amendment. *See United States v. Vogan,* 35 MJ 32, 34 ¶ 8 (CMA1992). The Court of Military Review was required to use an abuse-of-discretion standard (*see United States v. Fuzer,* 18 F.3d 517, 519 ¶ 9 (7th Cir.1994)). It found such an abuse because the judge based his dismissal action on a record which showed no legally cognizable prejudice to appellant and no unreasonable government conduct. *See United States v. Windom,* 19 F.3d 1190, 1195 ¶ 15 (7th Cir.1994); *see also United States v. Byrd,* 31 F.3d 1329, 1339–40 ¶ 23 (5th Cir. 1994).

18. The majority opinion agrees and states that "appellant has not met his burden of showing egregious or intentional tactical delay and actual prejudice." 41 MJ at 452 ¶ 15. I disagree and have attached the military judge's findings of fact in this case. *See* Appendix. I conclude that they do provide some evidence of legally cognizable prejudice and "egregious or intentional" government conduct. Accordingly, I would reverse the Court of Military Review's decision and uphold the judge's discretionary decision in this regard.

provide information helpful to the accused's defense. This failure to present some evidence or proffer regarding the knowledge of the accused concerning the identity of this man, coupled with the failure to present anything to indicate how this information would contribute to the defense of the accused, calls into question the sincerity of the accused's claims and the validity of the military judge's findings....

Unpub. op. at 10.

## APPENDIX

**NAVY-MARINE CORPS TRIAL JUDICIARY**
**SOUTHEAST JUDICIAL CIRCUIT (PENSACOLA)**
**UNITED STATES NAVY**

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| **v.** | ) | **GENERAL COURT-MARTIAL** |
| | ) | **RULING ON DEFENSE** |
| **KAYNO M. REED** | ) | **MOTION TO DISMISS** |
| **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** | ) | |
| **SN, USNR** | ) | |

**OPINION OF THE COURT:** Although the Defense has raised several issues of merit in its Motion to Dismiss, for reasons to become apparent, this opinion will address only the allegation that the accused was denied his Fifth Amendment right to Due Process. The Due Process guarantee of the Fifth Amendment applies to pre-preferral delays in prosecuting the accused. Once preferral has occurred, other speedy trial guarantees apply.

The leading case on the Fifth Amendment Due Process Clause is United States v. Lovasco, 431 U.S. 783 (1977). In this case the Supreme Court held that for a delay to be in violation of the Fifth Amendment Due Process Clause it must violate those "fundamental conceptions of justice which lie at the base of our civil and political institutions" and which define the "community sense of fair play and decency" Lovasco at 790. Military cases on this issue include Unites States v. Vogan, 35 MJ 32 (CMA 1992), United States v. Reeves, 34 MJ 1261 (NMCMR 1992). These cases require a court to evaluate a claimed violation of the Fifth Amendment Due Process Clause by looking to any actual prejudice to the accused and considering the reasons for delay.

Actual prejudice to the accused in this case includes the following:

An approximate 20 month delay occurred from the time of notice of the crime until preferral of charges. A delay of this magnitude clearly creates the inference that memories will have faded. This inference is easily supported by the NCIS investigation which reported that because of the delay a witness to the incident was unable to recall and identify others who were present when this event allegedly occurred. This delay will further have, at a minimum, denied the defense the opportunity to question the witnesses, as did the Government, at a time when their memory would be fresh. Rather, as the Government indicated in their Response to this motion, the witnesses will now likely refresh their recollection with the statements taken by the Government through NCIS.

The Defense specifically alleges the delay resulted in an inability to identify and locate certain witnesses generally

*Appellate Exhibit VIII*

identified as "two black males" in the room the night of this alleged incident. This contention is supported by the NCIS investigation which discusses a similar inability.

The accused has been held over his EAOS which would have been 4 September 1993. He was not free to return to civilian life at the expiration of his two year active duty enlistment. This prejudice is one not easily measured under a civilian "community sense of fair play and decency," as required by Lovasco. In a civilian community the accused is not restrained by the investigating jurisdiction unless he is in some fashion confined or his freedom of movement restricted--a stage at which other speedy trial rules would apply. In the military community a simple administrative action ensures retention of jurisdiction and the concomitant restriction on his freedom to re-enter the civilian community.

There is further a strong prejudice which attaches to an accused in the military, as this accused, whose command knows he is a "suspect" and then becomes the convening authority responsible for criminal processing of the alleged offense. In this regard, the military environment is unique and different than the civilian community and requires an application of a "community sense of fair play and decency" which may be different than that which applies in a civilian community. In the case at bar, we are concerned with a military community where, to analogize to the civilian community, the accused's "employer-boss" is in effect the "district attorney" who is determining whether to proceed with charges. This is markedly different than in the civilian community where an individual may be a suspect but, other than the investigators and possibly the district attorney, his personal/professional life will be by-and-large unaffected by these potential charges. For this accused, he was required to rely on his commanding officer, the "district attorney", for performance evaluations, recommendations for advancement, opportunities for school and training and other areas where he would have to compete with shipmates for consideration. The prejudice to someone in this predicament is subtle but obvious. It appears the accused's commanding officer clearly became aware the accused was a suspect in August 1992 when a NCIS agent came aboard the ship in Malta to photograph the accused for a line-up. For over 11 months prior to preferral, the accused's commanding officer was not only aware that he was a suspect but actually had a complete copy of the investigation and was responding to the alleged victim's command concerning action he was taking. At one point in December 1992, he even ordered further investigation by NCIS.

456

The Government's justification for the delay includes the following:

A lengthy chronology of investigative efforts to locate witnesses and interview them around the world. Since this incident allegedly occurred at "A" school but was not reported until after the school had been completed, the students had been sent to their next assignment and it was no easy task to locate them. This process, however, became ever more bogged-down as the investigative delays themselves caused further difficulties in locating suspects. It appears, as an example, that NCIS waited ten months to interrogate the accused. To illustrate further delay, at one point after the investigation had been closed, it was re-opened at the request of the commanding officer. It took NCIS over seven months of investigation for the limited purpose of obtaining additional information which was essentially that the witness could not remember anything further. In an effort to both explain the delay and minimize its prejudice, the Government is forced to take inconsistent positions. They argue, on one hand, that the investigation required significant time because of the many witnesses and difficulty in perfecting their case, yet they argue that the accused is not prejudiced by this delay since the case is relatively straight-forward and the only significant witness is the victim. The Government cannot have it both ways.

In summary, it is not the purpose of this Court to point a finger or lay blame at Government officials for delays in this case. The court is aware that there are investigative techniques to employ; resources are at times strained; and, the Government is entitled to perfect its case prior to preferral of charges. Additionally, commanding officers have ships to command and deployments to make. The inescapable conclusion in this case, however, is that the delay from notice of offense until preferral of charges was without justification and occurred to the great prejudice of the accused. This case concerns an incident which was quickly narrowed to one suspect, one victim and a handful of witnesses. There was no physical evidence to examine, no records to search and no lab or forensic tests to conduct. Indeed, the Government indicates at trial they intend to call only the alleged victim and two witnesses. The Government took approximately 20 months to investigate this incident and is now ready to prosecute using three witnesses. Nothing in the Government's argument serves as an adequate explanation of this delay. This delay was not without prejudice to the accused as he served over two-thirds of his enlistment as a rape "suspect" and known to be such by his commanding officer. The accused is further prejudiced by his involuntary extension beyond his enlistment and the many complications created by an effort to prepare a defense several years after the alleged incident.

Furthermore, while the statute of limitations may provide the outermost time at which an accused may be brought to trial, as the Government correctly argues, it clearly does not establish

an entitlement for delay. Each case must be evaluated on its own merits, both the reasons for delay and the prejudices suffered by the accused. A relatively uncomplicated offense should not require an accused to suffer the prejudices as discussed above including those attendant to being labeled a "suspect" in a rape for over a year while at the same time the Government's action is highlighted by month after month of complete inactivity. This Court finds that the accused has been denied the due process guaranteed him under the Fifth Amendment to the U. S. Constitution,

IT IS HEREBY ORDERED, Defense Motion to Dismiss is granted and the charge and specifications are dismissed with prejudice.

T. P. Tielens
Military Judge    27 Jan 9⁴

**458**

WISS, Judge (dissenting):

19. In my view, this appeal presents two principal questions. The first concerns the proper legal test to be applied to a claim that an accused was denied due process as a result of pre-preferral delay. I do not agree with the majority's answer to that question. Further, if one assumes for this discussion that the majority is correct in its answer, then the military judge applied an incorrect test, and the appropriate remedy is a remand so that the military judge may apply the correct one to the facts of the case—not for the majority to do so *ab initio*.

20. The second concerns the scope of claimed prejudice to the accused that may be considered in resolving such a claim. I do agree with the majority's implicit answer to this question. The military judge exceeded that scope, however, so I believe that, again, the appropriate remedy is a remand to the military judge for consideration of the accused's contention under proper construction of the law—not for this Court to perform this task in the first instance. Accordingly, I dissent.

I

21. Before a court will entertain an accused's claim that he was denied due process because of pre-preferral delay, the accused must demonstrate that he suffered actual prejudice as a result. *See* Part II, *infra.* In the face of such a showing, what is the appropriate legal test to be applied in connection with the Government's reasons for the delay? In other words, regarding the causes of the delay, who has the burden to show what?

22. The majority states that "[m]ost of the federal courts, relying on [*United States v.] Lovasco[,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977),] and [*United States v.] Marion[,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) ], have held that the defendant has the burden of proof to show an egregious or intentional tactical delay and actual prejudice." 41 MJ at 452 ¶ 13. In support, the majority drops a footnote that cites cases from the Fifth, Ninth, and Tenth Circuits. In fact, the circuits are split on this

issue, with some circuits expressly rejecting that view of the teachings of *Marion* and *Lovasco.*

23. For instance, in *Howell v. Barker,* 904 F.2d 889, 895 ¶¶ 20–22 (4th Cir.1990), the majority discussed and resolved this question as follows:

Therefore, in both *Lovasco* and *Marion,* the Supreme Court made it clear that the administration of justice, vis-a-vis a defendant's right to a fair trial, necessitated a case-by-case inquiry based on the circumstances of each case. Rather than establishing a black-letter test for determining unconstitutional preindictment delay, the Court examined the facts in conjunction with the basic due process inquiry: "whether the action complained of ... violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' ... and which define 'the community's sense of fair play and decency.'" *Lovasco,* 431 U.S. at 790, 97 S.Ct. at 2048 (citations omitted); *see United States v. Automated Medical Laboratories,* 770 F.2d 399, 404 (4th Cir.1985).

Applying these principles of due process to the case at hand, we cannot agree with the position taken by the State of North Carolina and those other circuits which have held that a defendant, in addition to establishing prejudice, must also prove improper prosecutorial motive before securing a due process violation. Taking this position to its logical conclusion would mean that no matter how egregious the prejudice to a defendant, and no matter how long the preindictment delay, if a defendant cannot prove improper prosecutorial motive, then no due process violation has occurred. This conclusion, on its face, would violate fundamental conceptions of justice, as well as the community's sense of fair play. Moreover, this conclusion does not contemplate the difficulty defendants either have encountered or will encounter in attempting to prove improper prosecutorial motive.

The better position, and the one previously taken by this Circuit in *United States v. Automated Medical Laboratories, supra,* is to put the burden on the defen-

dant to prove actual prejudice. Assuming the defendant can establish actual prejudice, then the court must balance the defendant's prejudice against the government's justification for delay. *Automated Medical Laboratories,* 770 F.2d at 403–04. "The basic inquiry then becomes whether the government's action in prosecuting after substantial delay violates 'fundamental conceptions of justice' or 'the community's sense of fair play and decency.'" *Id.* at 404 (citations omitted).

24. Over a decade earlier, the Seventh Circuit had expressed similar reasoning in reaching the same conclusion in *United States v. King,* 593 F.2d 269, 271–72 ¶¶ 9–11 (1979) (citation and footnote omitted):

If, on remand, it is determined that the defendants have suffered actual prejudice as a result of the pre-indictment delay, the reasons for the delay will have to be considered by the district court. *Lovasco, supra,* 431 U.S. at 790, 97 S.Ct. at 2049. Although the Supreme Court in *Marion* indicated that a "delicate judgment" would be required "[t]o accommodate the sound

administration of justice to the rights of the defendant to a fair trial," it left that judgment to the circumstances of each case. *Id.* ...

Two of the questions left unanswered are (1) given actual prejudice resulting from the delay, what sort of purpose or reason behind the delay must be shown to give rise to a due process violation, and (2) who bears the burden of proof on this issue. Some courts have seemed to require the defendant to prove that issuance of the indictment was purposefully delayed in an attempt by the Government to gain a tactical advantage over the defendant. *See, e.g., United States v. Francisco,* 575 F.2d 815, 817 (10th Cir.1978) ... Others have read *Lovasco* as only requiring the defendant to prove actual prejudice, after which showing it is up to the court to balance the reasons asserted by the Government against the prejudice asserted by the defendant. *See, e.g., United States v. Brand,* 556 F.2d 1312, 1317 n. 7 (5th Cir. 1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 763 (1978).[1] We believe

---

**1.** The decision of the Fifth Circuit in *Brand* was cited by that same circuit in its 1982 opinion in *United States v. Townley,* 665 F.2d 579, *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982). There, the court wrote:

We should, at this point, briefly note a contention advanced by the government in brief but not urged at oral argument. Based on statements to that effect by way of dicta in some of our decisions, the government initially suggested that, even if actually prejudiced, an accused could not prevail upon his due process claim unless he also proves that the delay resulted from intentional tactical delay or harassment on the part of the government. To the contrary, an earlier decision of this circuit has noted, consistent with holdings in earlier decisions of this circuit, that *Lovasco* and *Marion* do not stand for the proposition "that governmental interests *not* amounting to an intentional tactical delay will automatically justify prejudice to a defendant." *United States v. Brand, supra,* 556 F.2d 1312, at 1317 (n. 7). Here, the *Lovasco* balancing test would be reduced to mere words, if indeed the government's 41-month delay in bringing the indictment were excusable, whatever the prejudice caused the defendant, simply by showing that the government was negligent, however grossly, and not bad-intentioned.

665 F.2d at 582 ¶ 10 (footnote omitted). The majority correctly cites last year's Fifth Circuit opinion in *United States v. Byrd,* 31 F.3d 1329, 1339, as containing language requiring the defendant to prove intentional tactical delay by the Government. Curiously, the *Byrd* opinion makes no reference to *Townley* or *Brand* and contains no analysis of this question—rather, it makes the statement that is quoted by the majority.

In sole support of its assertion, *Byrd* cites (¶ 23) two other 1994–vintage Fifth Circuit cases, *United States v. Neal,* 27 F.3d 1035, and *United States v. Beszborn,* 21 F.3d 62, 65–66. *Beszborn* cited only *United States v. Amuny,* 767 F.2d 1113 (5th Cir.1985), while *Neal* cited *Amuny* as well as *United States v. Delario,* 912 F.2d 766, 769 (5th Cir.1990).

Following the *Delario* line first, that case relied upon *United States v. Carlock,* 806 F.2d 535 (5th Cir.1986), which in turn cited *United States v. Ballard,* 779 F.2d 287, 293 (5th Cir.), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986), which in turn cited *United States v. Amuny, supra.* In a footnote (18), the *Ballard* opinion offered a *"see also"* reference to *Townley* — which, it will be recalled, had analyzed and expressly had rejected this standard—and to *United States v. Hendricks,* 661 F.2d 38, 40 (5th Cir. 1980); more about *Hendricks* in a moment.

Now, in tracing the history of *Amuny* —the case solely relied upon by *Beszborn* (¶ 13) and cited along with *Delario* in *Neal,* the line is short.

that the latter view is the better one and most closely follows the balancing analysis employed by the Supreme Court in *Lovasco.*

In order for the court to weigh the competing interests correctly, it is necessary for it to be fully apprised of the reasons asserted by the Government as necessitating the pre-indictment delay. These reasons can best be put forward by the Government. Accordingly, once the defendant has proven (1) actual prejudice (2) resulting from the delay, the burden shifts to the Government to show why the delay was necessary. . . .

25. Upon the logic reflected in the opinions quoted above, I believe that the more sensible approach and the one which is more sensitive to the nature of the due process inquiry is as follows: Once an accused has shown actual prejudice, the court will balance the nature of that prejudice against whatever reasons are offered by the Government to explain the delay. The court will ask itself, given the balance under the circumstances of the case before it, whether the Government's prosecution after substantial delay violates "fundamental conceptions of justice" or "the community's sense of fair play and decency." *See United States v. Lovasco, supra* at 790, 97 S.Ct. at 2049 ¶ 11.

26. Thus, unlike the majority, I would not place the burden on the *accused* to divine and demonstrate the *Government's* reasons for its delay in preferring charges; that does not seem to me to be common sense. Also apparently unlike the majority, I would not block myself as a matter of law from finding a denial of due process in any particular case just because the delay resulted from something like the Government's gross negligence or recklessness, as opposed to bad motive.

27. As to this latter point, it may be that the majority anticipates that such scenarios

would constitute "egregious" delay and so could be remedied under its standard. *See generally United States v. Vogan,* 35 MJ 32, 34 ¶ 8 (CMA1992) (Due Process Clause of Fifth Amendment "may be applicable to protect an accused against egregious trial delays"). I would prefer, instead, simply to follow the approach of looking at whatever reasons the Government offers in the course of considering whether continued prosecution in a particular case violates due process as described in *Lovasco,* rather than using uncertain labels like "egregious." I am convinced that this approach best reflects *Lovasco* 's balancing analysis that is designed to permit a court to make a "delicate judgment" in each individual case that will "accommodate the sound administration of justice to the rights of the defendant to a fair trial." *United States v. Marion,* 404 U.S. at 325, 92 S.Ct. at 466 ¶ 16.

28. From the military judge's written ruling, which is attached as an appendix to the Chief Judge's separate opinion, the military judge seems to have performed the balancing test that I would adopt. He wrote: "These cases require a court to evaluate a claimed violation of the Fifth Amendment Due Process Clause by looking to any actual prejudice to the accused and considering the reasons for delay." Accordingly, I would find in favor of the military judge on this first question.

29. The majority, however, embraces the more difficult intentional-delay test. Under these circumstances, it would seem appropriate for the majority to remand the case to the military judge for reconsideration of appellant's motion based upon what the majority now holds is the correct legal standard. Without explanation, though, the majority itself proceeds to apply this test for the first time to the evidence in this case. In my opinion, that usurps the military judge's

---

*Amuny,* after stating the test, cited *Townley* —but only for the prejudice element—and *Hendricks* — for the bad-motive element. (¶ 18) *Amuny* contains no hint why it would cite *Townley* for the prejudice element but entirely ignore the fact that that case had specifically rejected the bad-motive element as illogical; instead, for the bad-motive element of the test, *Amuny* relied only upon *Hendricks.* Not only did *Hendricks* predate *Townley* and therefore would seem to have been

overcome by it, but *Hendricks* itself simply stated that the defendant there had "produced no evidence even tending to show that the delay was a deliberate tactical maneuver by the government"—with no authority at all cited as support. ¶ 4.

In these circumstances, it would seem that any effort to discern the Fifth Circuit's position on this issue is problematic.

function and the right of appellant to have his motion decided upon correct legal principles in the trial forum.

## II

30. As indicated earlier, the predicate to any need to evaluate the Government's reasons for delay is a showing by an accused of actual prejudice resulting from the delay. The elements of prejudice that are considered in civilian courts relate only to impact on the accused's ability to prepare and present a defense. *See United States v. Lovasco* and *United States v. Marion,* both *supra.* In this case, however, the military judge—as is clear from his written ruling—considered not only those factors but, as well, other aspects of "prejudice" which the military judge decided had peculiar impact on the personal and professional life of a military accused versus a civilian defendant.

31. Before this Court can review the correctness of the judge's dismissal ruling, it must necessarily decide whether those factors properly may be weighed in a Fifth Amendment due process analysis or, instead, whether they are limited to a Sixth Amendment speedy-trial analysis (not in issue here) because they have nothing to do with the accused's ability to present a defense. I have a sense from the majority's opinion that it views the appropriate scope of the search for prejudice in a Fifth Amendment context to be limited to factors affecting an accused's ability to prepare and present a defense. On the basis of the concerns ventilated in *Lovasco* and consistent with the manner in which other Federal courts have applied *Lovasco,* I agree.

32. That being the case, again I suggest that the appropriate remedy is a remand to the trial court so that the military judge can evaluate appellant's motion under a proper understanding of the legal parameters of his consideration.[2] A trial forum is the appropriate place for a motion to be considered and decided under correct legal principles, and the ruling there would seem to be reviewable only for an abuse of discretion. *See United States v. Fuzer,* 18 F.3d 517, 519 ¶ 9 (7th Cir.1994). That is a highly deferential standard, and conceptually it would not seem to square with the majority's assumption of the function of not only deciding the proper legal principles but also being the first forum to apply them in a particular case.

## III

33. In summary, then, I would hold that the military judge applied the correct legal test to resolve appellant's due process claim but, in considering prejudice to appellant, erred in defining the scope of factors to be considered. On this basis, I would remand the case to the military judge for reconsideration in light of this holding.

2. I agree with the Chief Judge that the military judge's findings "do provide some evidence of legally cognizable prejudice...." 41 MJ at 453 ¶ 18. How that prejudice balances against the Government's reasons for delay, of course, is a matter for the military judge to consider on remand. Regrettably, the majority is unwilling to give the military judge that opportunity.